UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DANIEL PRUITT, individually and on
behalf of all others similarly situated,**

      **Plaintiffs,**

**v.**                                       **CASE NO.:**

**BEST BUY CO., INC.,**

      **Defendant.**

_____/

## CLASS ACTION COMPLAINT

1.      Named Plaintiff Daniel Pruitt ("Plaintiff"), files this Class Action Complaint alleging Best Buy, L.P. ("Best Buy") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide him with a COBRA notice that complies with the law.

2.      Despite having access to the Department of Labor's Model COBRA form, Best Buy chose not to use the model form— presumably to save Best Buy money because COBRA coverage is inherently expensive for employers.  A copy of the Model Form is attached as Exhibit A.

3.      In fact, according to one Congressional research service study, "…[The] average claim costs for COBRA beneficiaries exceeded the average claim for an active employee by 53%. The average annual health insurance cost per active employee was $7,190, and the COBRA cost was $10,988.14. The Spencer & Associates analysts contend

that this indicates that the COBRA population is sicker than active-covered employees and that the 2% administrative fee allowed in the law is insufficient to offset the difference in actual claims costs." *Health Insurance Continuation Coverage Under COBRA*, Congressional Research Service, Janet Kinzer, July 11, 2013.

4.      The deficient COBRA notices at issue in this lawsuit both confused and misled Plaintiff.  It also caused Plaintiff economic injuries in the form of lost health insurance and unpaid medical bills, as well as informational injuries.

5.      Best Buy, the plan sponsor and plan administrator of the Best Buy Health and Welfare Plan ("Plan"), has repeatedly violated ERISA by failing to provide participants and beneficiaries in the Plan with adequate notice, as prescribed by COBRA, of their right to continue their health coverage upon the occurrence of a "qualifying event" as defined by the statute.

6.      Simply put, Defendant's COBRA notice and process violates the law. Rather than including all information required by law in a single notice "written in a manner calculated to be understood by the average plan participant," Defendant's COBRA notification process instead offers only part of the legally required information.

7.      For example, Defendant's "COBRA Enrollment Notice," dated November 15, 2019, and attached as Exhibit B, violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice *__itself__* never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes).

8.      Instead, Defendant's COBRA enrollment notice merely directs plan participants to a "catch-all" general H.R. phone number to enroll in COBRA, and website,

operated by a third-party disguised as Best Buy's HR department, rather than explaining how to actually enroll in COBRA.  But the COBRA notice contains no instructions on how to actually enroll if one calls the phone number, or when one visits the website.

9.      Additionally, Defendant's COBRA enrollment notice violates 29 C.F.R. § 2590.606–4(b)(4)(xii) because the COBRA notice itself fails to include an address indicating where COBRA payments should be mailed.  It also violates 29 C.F.R. § 2590.606-4(b)(4)(i) because the COBRA enrollment notice fails to identify the plan administrator.   And, Defendant's COBRA enrollment notice violates 29 C.F.R. § 2590.606–4(b)(4)(xii) because it fails to include information on how COBRA coverage can be lost prematurely, including, for example, because of late payments.  Furthermore, the COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information.

10.      Because Defendant's COBRA enrollment notice omits the above critical pieces of information, it collectively violates 29 C.F.R. § 2590.606–4(b)(4), which requires the plan administrator of a group-health plan to provide a COBRA notice "written in a manner calculated to be understood by the average plan participant."  Without information on *how* to elect COBRA, or *where* to send payments, or *who* is the Plan Administrator, or *what* happens if timely payments are not made, Defendant's COBRA enrollment notice simply is not written in a manner calculated to be understood by the average plan participant.

11.      As a result of these violations, which threaten Class Members' ability to maintain their health coverage, Plaintiffs seek statutory penalties, injunctive relief,

attorneys' fees, costs and expenses, and other appropriate relief as set forth herein and provided by law.

## JURISDICTION, VENUE, AND PARTIES

12.     This Court has jurisdiction over this action pursuant to 29 U.S.C. § 1132(e) and (f), and also pursuant to 28 U.S.C. §§ 1331 and 1355.

13.     Venue is proper in this District pursuant to 29 U.S.C. § 1132(e)(2). Additionally, ERISA § 502(e)(2) provides that venue is proper "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2).   Because the breach at issue took place in this District, venue is also proper.

14.     Plaintiff is a Florida resident.   Daniel Pruitt is a former employee of Defendant for more than 20 years.   Daniel Pruitt was covered based on his health plan through Defendant.   Plaintiff was thus a participant/beneficiary in the Plan before his termination on November 6, 2019 which constituted a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).   Importantly, Daniel Pruitt was not terminated for gross misconduct.

15.     Defendant is a corporation with its headquarters in Richfield, Minnesota but is registered to do business in the State of Florida.   Defendant employed more than 20 employees who were members of the Plan in each year from 2013 to 2019.   Defendant is the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). The Plan provides medical benefits to employees and their beneficiaries, and is an employee welfare benefit plan

within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

## FACTUAL ALLEGATIONS

### COBRA Notice Requirements

16.    The COBRA amendments to ERISA included certain provisions relating to continuation of health coverage upon termination of employment or another "qualifying event" as defined by the statute.

17.    Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "**each** qualified beneficiary who would lose coverage under the plan as a result of a qualifying event … to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161.  (Emphasis added).

18.    Notice is of enormous importance. The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their healthcare coverage.

19.    Moreover, existing case law makes it ostensibly clear that notice is not only required to be delivered to covered employees but to qualifying beneficiaries, as well.

20.    COBRA further requires the administrator of such a group health plan to provide notice to any qualified beneficiary of their continuation of coverage rights under COBRA upon the occurrence of a qualifying event. 29 U.S.C. § 1166(a)(4). This notice must be "[i]n accordance with the regulations prescribed by the Secretary" of Labor.  29 U.S.C. § 1166(a).

21.     The relevant regulations prescribed by the Secretary of Labor concerning

notice of continuation of coverage rights are set forth in 29 C.F.R. § 2590.606-4 as follows:

(4)  The notice required by this paragraph (b) shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:

(i)  The name of the plan under which continuation coverage is available; and the name, address and telephone number of the party responsible under the plan for the administration of continuation coverage benefits;

(ii) Identification of the qualifying event;

(iii) Identification, by status or name, of the qualified beneficiaries who are recognized by the plan as being entitled to elect continuation coverage with respect to the qualifying event, and the date on which coverage under the plan will terminate (or has terminated) unless continuation coverage is elected;

(iv) A statement that each individual who is a qualified beneficiary with respect to the qualifying event has an independent right to elect continuation coverage, that a covered employee or a qualified beneficiary who is the spouse of the covered employee (or was the spouse of the covered employee on the day before the qualifying event occurred) may elect continuation coverage on behalf of all other qualified beneficiaries with respect to the qualifying event, and that a parent or legal guardian may elect continuation coverage on behalf of a minor child;

(v)  An explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made;

(vi) An explanation of the consequences of failing to elect or waiving continuation coverage, including an explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage,

and special enrollment under part 7 of title I of the Act, with a reference to where a qualified beneficiary may obtain additional information about such rights; and a description of the plan's procedures for revoking a waiver of the right to continuation coverage before the date by which the election must be made;

(vii)   A description of the continuation coverage that will be made available under the plan, if elected, including the date on which such coverage will commence, either by providing a description of the coverage or by reference to the plan's summary plan description;

(viii)  An explanation of the maximum period for which continuation coverage will be available under the plan, if elected; an explanation of the continuation coverage termination date; and an explanation of any events that might cause continuation coverage to be terminated earlier than the end of the maximum period;

(ix) A description of the circumstances (if any) under which the maximum period of continuation coverage may be extended due either to the occurrence of a second qualifying event or a determination by the Social Security Administration, under title II or XVI of the Social Security Act (42 U.S.C. 401 et seq. or 1381 et seq.) (SSA), that the qualified beneficiary is disabled, and the length of any such extension;

(x)   In the case of a notice that offers continuation coverage with a maximum duration of less than 36 months, a description of the plan's requirements regarding the responsibility of qualified beneficiaries to provide notice of a second qualifying event and notice of a disability determination under the SSA, along with a description of the plan's procedures for providing such notices, including the times within which such notices must be provided and the consequences of failing to provide such notices. The notice shall also explain the responsibility of qualified beneficiaries to provide notice that a disabled qualified beneficiary has subsequently been determined to no longer be disabled;

(xi) A description of the amount, if any, that each qualified

beneficiary will be required to pay for continuation coverage;

(xii) A description of the due dates for payments, the qualified beneficiaries' right to pay on a monthly basis, the grace periods for payment, the address to which payments should be sent, and the consequences of delayed payment and non-payment;

(xiii) An explanation of the importance of keeping the administrator informed of the current addresses of all participants or beneficiaries under the plan who are or may become qualified beneficiaries; and

(xiv) A statement that the notice does not fully describe continuation coverage or other rights under the plan, and that more complete information regarding such rights is available in the plan's summary plan description or from the plan administrator.

22.     To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. It is attached hereto as Exhibit A.  The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

23.     In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of

attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).  Such is the case here.

Defendant failed to use the Model Notice and failed to meet the notice requirements of

29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, as set forth below.

### *Defendant's Notice Is Inadequate and Fails to Comply with COBRA*

24.     Defendant partially adhered to the Model Notice provided by the Secretary

of Labor, but only to the extent that served Defendant's best interests, as critical parts are

omitted or altered in violation of 29 C.F.R. § 2590.606-4. Defendant authored and

disseminated a notice deviating from the model form in violation of COBRA's

requirements which failed to provide Plaintiff notice of all required coverage information,

as explained further below. A copy of Defendant's first notice is attached hereto as

Exhibit B.  Among other things:

**a.      Defendant's COBRA enrollment notice, attached as Exhibit B, violates 29 C.F.R. § 2590.606-4(b)(4)(v) because the notice itself never actually explains how to enroll in COBRA, nor does it bother including a physical election form (both of which the model Department of Labor form includes);**

**b.      Exhibit B violates 29 C.F.R. § 2590.606-4(b)(4)(xii) because it fails to provide the address to which payments should be sent;**

**c.      Exhibit B violates 29 C.F.R. § 2590.606-4(b)(4)(i) because it fails to provide the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits, including as to both the Plan Administrator and COBRA Administrator;**

**d.      Exhibit B violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information. There is no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act; and, finally,**

**e.     Exhibit B violates 29 C.F.R. § 2590.606-4(b)(4) because Defendant has failed to provide a notice written in a manner calculated to be understood by the average plan participant.**

25.     Defendant's COBRA notice confused Plaintiff and resulted in his inability to make an informed decision as to electing COBRA continuation coverage. In fact, Plaintiff Daniel Pruitt was unable to elect COBRA because of the confusing and incomplete Best Buy COBRA notice.  For example, the COBRA's notice omission of a payment address left him without information on where to mail payment if elected.

26.     As a result, Plaintiff could not make an informed decision about his health insurance and lost health coverage.

### Plaintiff's First Concrete Injury: Informational Injury

27.     Furthermore, Defendant's deficient COBRA notice caused Plaintiff an informational injury when Defendant failed to provide him with information to which he was entitled to by statute, namely a compliant COBRA election notice containing all information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Through ERISA and then COBRA, Congress created a right—the right to receive the required COBRA election notice—and an injury—not receiving a proper election notice with information required by 29 C.F.R. § 2590.606-4(b)(4) and 29 U.S.C. § 1166(a). Defendant injured Plaintiff and the class members he seeks to represent by failing to provide all information in its notice required by COBRA.

### Plaintiff's Second Concrete Injury: Loss of Insurance Coverage

28.     Besides the informational injury suffered, Plaintiff also suffered a tangible injury in the form of economic loss, specifically the loss of insurance coverage

and incurred medical bills, due to Defendant's deficient COBRA election notice. Besides a paycheck, insurance is one of the most valuable things employees get in exchange for working for an employer like Defendant.  Insurance coverage has a monetary value, the loss of which is a tangible and an economic injury.

### Plaintiff Daniel Pruitt

29.     Plaintiff Daniel Pruitt is former employee of Defendant and was a participant in Defendant's health plan.

30.     Plaintiff Daniel Pruitt's employment was terminated on November 6, 2019.  Importantly, he was not terminated for gross misconduct.

31.     Following this qualifying event, Defendant mailed Plaintiff the deficient COBRA enrollment notice on November 15, 2019.   Compounding the confusion created by Exhibit B's omissions, also on November 15, 2019, Defendant mailed to Plaintiff a "Conversion/Portability Notice," attached as Exhibit C, containing information on COBRA.

32.     More confusing still, Best Buy mailed a third COBRA notice to Plaintiff on November 15, 2019, labeled as "Important Information About Your COBRA Continuation Coverage," attached as Exhibit D.    And while Exhibit C contains some of the information missing from Exhibit B, it does not contain all of it.

33.     Moreover, Defendant cannot cure its first form's deficiencies with a "follow up" form.   Contrary to Defendant's multi-form system, the applicable regulation mandates use of a single "notice" rather than the dual "notices" Defendant uses. *See* 29 C.F.R. § 2590.606-4(b)(4)(1) ("The administrator shall furnish to each

qualified beneficiary, not later than 14 days after receipt of the notice of qualifying event, a notice meeting the requirements of paragraph (b)(4) of this section.) (Emphasis added).

34.     The deficient COBRA notice that Plaintiff received was violative of COBRA's mandates for the reasons set forth above.

35.     Defendant has in place no administrative remedies Plaintiff were required to exhaust prior to bringing suit.

36.     Additionally, because no such administrative remedies exist, any attempt to exhaust the same would have been futile.

### Violation of 29 C.F.R. 29 C.F.R. § 2590.606-4(b)(4)(v)
### Failure to explain how to enroll in COBRA

37.     The governing statute clearly requires that "[t]he notice … shall be written in a manner calculated to be understood by the average plan participant and shall contain the following information:…(v) [a]n explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made." 29 C.F.R. § 2590.606-4(b)(4)(v).

40.     As a threshold matter, Defendant's COBRA enrollment notices fail to adequately explain the procedures for electing coverage.

41.     Instead, Defendant's COBRA enrollment notice merely directs plan participants to a general phone number, and website, rather than explaining how to actually enroll in COBRA.  To further compound the confusion, the Best Buy COBRA enrollment notice contains no instructions on how to actually enroll if one calls the phone number or

12

visits the website.  The telephone number provided by Best Buy in its COBRA enrollment notice is a "catch-all" number individuals can call with questions about anything benefit-related, including retirement funds, etc., as is the website.

42.     A "catch-all" number provided by Defendant and then routed to a third-party call center designed to answer anything HR-related simply cannot meet the strict informational statutory requirements of 29 C.F.R. § 2590.606-4(b)(4)(v) required of all COBRA notices as to enrollment.  The same is true as to the generic website link provided. Merely directing individuals to a website link and assuming he/she will be able to figure out how to enroll in COBRA once the website is visited simply is very different than actually explaining how to enroll in COBRA.

43.     Unlike the Best Buy COBRA notice, the Model DOL notice provides a near fool-proof way to elect COBRA coverage by providing a physical election form to mail in, the date it is due, the name and address to where election forms should be sent, spaces for the names, social security numbers, and type of coverage elected by each plan participant or beneficiary.

44.     Best Buy's COBRA enrollment notice simply does not contain "an explanation of the plan's procedures for electing continuation coverage, including an explanation of the time period during which the election must be made, and the date by which the election must be made" as required by 29 C.F.R. § 2590.606-4(b)(4)(v).  Merely telling Plaintiff and the putative class members to call a generic 1-800 number operated by a third-party and hope they are able to figure out how to enroll after they call is not what is legally required in a COBRA notice.  Instead, the notice itself must contain information on

how to enroll.  Best Buy's simply does not.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(xii) – Failure to provide the address to which payments should be sent*

45.     Defendant is specifically required to include in its notice the address to which

payments should be sent. 29 C.F.R. § 2590.606-4(b)(4)(xii).

46.     The COBRA enrollment notice provided to Plaintiff states "Once enrolled, you'll receive your first bill for the cost of continuing coverage from the date your coverage ended through the end of the month in which you make your COBRA/continuation coverage election.  You must submit your first payment within 45 days of when you elected COBRA/continuation coverage." Remarkably, however, the notice fails to actually state where payments are to be sent.  This is a per se violation of 29 C.F.R. § 2590.606-4(b)(4)(xii), which on its face requires all COBRA notices include "the address to which payments should be sent."

47.     Defendant's attempt to cure this deficiency by providing a mailing address for payment in Exhibit D only demonstrates that Defendant knows this information must be disclosed.  But this piecemeal strategy for separating COBRA information does not comport with the law.  Rather, as demonstrated by the Model DOL COBRA notice, which is a single cohesive document, 29 C.F.R. § 2590.606-4(b)(4)(xii) contemplates providing the statutorily required information in "a" COBRA notice (singular) rather than in multiple documents which must be read in conjunction with one another for plan participants/beneficiaries to glean the necessary information from.

48.     Without this information Plaintiff was left ready and willing, but unable, to properly enroll and maintain continuation coverage.

49.     A misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision. Without knowing where to send payment, Plaintiff was misled as to how to enroll in COBRA.

50.     Because of the foregoing deficiencies, Defendant's COBRA notice is insufficient. Defendant has misled Plaintiff about the material parameters and procedures surrounding his right to elect Cobra coverage, failing to comply with the requirements made clear by the Code of Federal Regulations.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(vi) – Failure to Include Explanatory Information*

51.     Defendant's COBRA enrollment notice violates 29 C.F.R. § 2590.606-4(b)(4)(vi) because it fails to provide all required explanatory information.  For example, there is simply no explanation that a qualified beneficiary's decision whether to elect continuation coverage will affect the future rights of qualified beneficiaries to portability of group health coverage, guaranteed access to individual health coverage, and special enrollment under part 7 of title I of the Act.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4)(i) – Failure to Identify Plan Administrator*

52.     Plaintiff was unable -- based on the Notice -- to ascertain the name, address and telephone number of the party responsible under the plan for the

administration of continuation coverage benefits.

53.     Defendant was required to provide "in a manner calculated to be understood by the average plan participant ... the name, address and telephone number of the party responsible under the plan for administration of continuation coverage benefits." 29 C.F.R. § 2590.606- 4(b)(4)(i). Defendant's Notice fails to comply with this straightforward requirement.

54.     Identifying **_who_** acted is the Plan Administrator is absolutely critical to know because "the plan administrator bears the burden of proving that adequate COBRA notification was given to the employee." *Griffin v. Neptune Tech. Group*, 2015 U.S. Dist. LEXIS 48000, 2015 WL 1635939, *9 (M.D. Ala. Apr. 13, 2015); (*citing to Hoffman v. R.F. Group*, 2015 U.S. Dist. LEXIS 88598, *12, 2015 WL 4139084 (M.D. Fla. May 20, 2015).   Best Buy's notice omits this critical and legally required information.

### *Violation of 29 C.F.R. § 2590.606-4(b)(4) – Failure to Provide COBRA Notice Written in a Manner Calculated "To Be Understood By the Average Plan Participant"*

55.     By failing to adequately explain the procedures for electing coverage, as required by 29 C.F.R. § 2590.606-4(b)(4)(v), coupled with the complete omission of how to actually enroll in COBRA, where to send payment, the consequences for untimely payments, failure to include all required explanatory information, and even who the Plan Administrator is/was, Defendant cumulatively violated 29 C.F.R. § 2590.606- 4(b)(4). This particular section mandates that employers, like Defendant, must provide a notice of continuation coverage written in a manner calculated "to be understood by the average plan participant."   Without the aforementioned critical pieces of, Defendant's COBRA notice

cannot be said to be written in a manner calculated "to be understood by the average plan participant."  Thus, Defendant violated 29 C.F.R. § 2590.606-4(b)(4)(v).

## **CLASS ACTION ALLEGATIONS**

56.     Plaintiff brings this action as a class action pursuant to the Federal

Rules of Civil Procedure on behalf of the following persons:

> **All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA notice by Defendant during the applicable statute of limitations period as a result of a qualifying event, as determined by Defendant's records, and did not elect continuation coverage**.

57.     No administrative remedies exist as a prerequisite to Plaintiff's claims on behalf of the Putative Class.   As such, any efforts related to exhausting such non-existent remedies would be futile.

58.     <u>Numerosity</u>: The Class is so numerous that joinder of all Class members is impracticable. On information and belief thousands of individuals satisfy the definition of the Class.

59.     <u>Typicality</u>: Plaintiff's claims are typical of the Class.  The COBRA notice that Defendant sent to Plaintiff was a form notice that was uniformly provided to all Class members. As such, the COBRA notice that Plaintiff received were typical of the COBRA notices that other Class Members received and suffered from the same deficiencies.

60.     <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the Class members, he has no interests antagonistic to the class, and has retained

counsel experienced in complex class action litigation.

61.   <u>Commonality:</u> Common questions of law and fact exist as to all members of  the Class and predominate over any questions solely affecting individual members of the Class, including but not limited to:

a.   Whether the Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

b.   Whether Defendant's COBRA notice complied with the requirements of 29  U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

c.   Whether statutory penalties should be imposed against Defendant under 29   U.S.C. § 1132(c)(1) for failing to comply with COBRA notice requirements, and if so, in what amount;

d.   The appropriateness and proper form of any injunctive relief or other equitable relief pursuant to 29 U.S.C. § 1132(a)(3); and

e.   Whether (and the extent to which) other relief should be granted based on Defendant's failure to comply with COBRA notice requirements.

62.   Class Members do not have an interest in pursuing separate individual actions against Defendant, as the amount of each Class Member's individual claims is relatively small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices and the adequacy of its COBRA notice. Moreover, management of this action as a class action will not present

any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class Members' claims in a single action.

63.     Plaintiff intends to send notice to all Class Members to the extent required the Federal Rules of Civil Procedure.  The names and addresses of the Class Members are available from Defendant's records.

## CLASS CLAIM I FOR RELIEF
### *Violation of 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4*

64.     The Plan is a group health plan within the meaning of 29 U.S.C. § 1167(1).

65.     Defendant is the plan sponsor and plan administrator of the Plan and was subject to the continuation of coverage and notice requirements of COBRA.

66.     Plaintiff and the other members of the Class experienced a "qualifying event" as defined by 29 U.S.C. § 1163, and Defendant was aware that they had experienced such a qualifying event.

67.     On account of such qualifying event, Defendant sent Plaintiff and the Class Members a COBRA notice.

68.     The COBRA notice that Defendant sent to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 for the reasons set forth above (among other reasons).

69.     These violations were material and willful.

70.     Defendant knew that its notice was inconsistent with the Secretary of Labor's Model Notice and failed to comply with 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4, but chose to use a non-compliant notice in deliberate or reckless disregard of the rights of Plaintiff and other Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for relief as follows:

a.  Designating Plaintiff's counsel as counsel for the Class;

b.  Issuing proper notice to the Class at Defendant's expense;

c.  Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

d.  Awarding appropriate equitable relief pursuant to 29 U.S.C. § 1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

e.  Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

f.  Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

g.  Granting such other and further relief, in law or equity, as this Court deems appropriate.

h.  Designating Plaintiff's counsel as counsel for the Class;

i.  Issuing proper notice to the Class at Defendant's expense;

j.  Declaring that the COBRA notice sent by Defendant to Plaintiff and other Class Members violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4;

k.  Awarding appropriate equitable relief pursuant to 29 U.S.C. §

1132(a)(3), including but not limited to an order enjoining Defendant from continuing to use its defective COBRA notice and requiring Defendant to send corrective notices;

l.        Awarding statutory penalties to the Class pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1 in the amount of $110 per day for each Class Member who was sent a defective COBRA notice by Defendant;

m.        Awarding attorneys' fees, costs and expenses to Plaintiff's counsel as provided by 29 U.S.C. § 1132(g)(1) and other applicable law; and

n.        Granting such other and further relief, in law or equity, as this Court deems appropriate.

Dated this 15th day of January, 2020.

Respectfully submitted,

/s/Brandon J. Hill
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: jcornell@wfclaw.com
Email: rcooke@wfclaw.com
***Attorneys for Plaintiff***

And

/s/Chad A. Justice
**CHAD A. JUSTICE**

Florida Bar Number: 121559
**Justice for Justice LLC**
1205 N Franklin Street, Suite 326
Tampa, Florida 33602
Direct No. 813-566-0550
Facsimile: 813-566-0770
E-mail: chad@getjusticeforjustice.com
**Attorney for Plaintiff**